## Frank Young by Andrew Bachman, Appellee, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

1. Waters and water courses, § 10*—*when owner of dominant heritage has right to discharge collected waters on land of servient heritage.* The owner of the dominant heritage has the right to collect the waters falling on his land and throw them on the land of the servient heritage in increasing quantities and is not liable for damages caused thereby, providing the waters are thrown on the servient heritage at a point where in the course of nature they originally flow.

2. Adjoining landowners, § 1*—*when doctrine of lateral support is inapplicable.* Where plaintiff's land adjoining defendant's railroad right of way was in part at a considerable elevation above said right of way and so hilly that at the time of heavy rainfall the water would flow .with such velocity from plaintiff's land onto said right of way that it caused the soil to wash and flow off into a ditch excavated by defendant along the right of way and ten or twelve feet from plaintiff's land, and to cause ditches and gullies in plaintiff's land, *held* that 'while the doctrine of lateral support obtains, it is not applicable to the facts and it was error, in a suit for damages against the railroad, to refuse a peremptory instruction for the defendant.

3. Adjoining landowners, § 2*—*when instruction is erroneous as not conforming to pleadings in action for damages resulting from excavation.* Where a declaration charged damages to plaintiff's land by reason of an excavation made by the defendant railroad on its adjoining land causing plaintiff's land to cave and fall into said excavation, and the evidence showed plaintiff's land was the dominant and defendant's the servient land, and that the water flowed from plaintiff's to defendant's land after as before such excavation, *held* that an instruction, to the effect that if the jury believe from the evidence that the defendant by such excavation negligently diverted the flow of surface water over plaintiff's land and thereby caused such water to erode the surface of said land and render it unfit for cultivation as charged in the declaration, did not follow the theory of said declaration and was not supported by the evidence, and the giving of same was erroneous.

4. Railroads, § 943*—*when instruction on right of owner to recover damages for injury to land by fire is erroneous.* Where the owner of land sued a railroad company for damages for injuries

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to said land by fire from defendant's engine, and the evidence showed said land was rented and that the tenant had sued for and collected damages to the crop of hay growing on said land, *held* the giving of an instruction on the part of the plaintiff that if the jury believe from the evidence that the defendant negligently set fire to plaintiff's land as charged in the declaration and damaged the crops growing thereon, then they should find for plaintiff, was erroneous, and the only damage plaintiff would be entitled to recover would be the damage to the remainder.

5. RAILROADS, § 943*—*when defendant is estopped from insisting upon correct rule of damages in an action by owner for injury to land by fire.* The proper measure of damages in an action by the owner of land in possession of his tenant against a railroad company because of injury to said land caused by fire from defendant's engine is the value of the premises before and after the fire, but the defendant cannot insist on this measure of damages where he offered on the trial testimony as to the cost of resowing the land burned over and as to the loss of the succeeding crop of hay.

Appeal from the Circuit Court of White county; the Hon. JULIUS C. KERN, Judge, presiding. Heard in this court at the March term, 1916. Reversed and remanded. Opinion filed November 13, 1916.

P. J. KOLB and N. C. BAINUM, for appellant; L. J. HACKNEY and FRANK L. LITTLETON, of counsel.

FRANCIS M. PARISH and CONGER, PEARCE & CONGER, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellee, who was the owner of the Northeast Quarter of the Northeast Quarter of Section 22, and the Northwest Quarter of the Northwest Quarter of Section 23, Town 5 South, Range 9 East, except the right of way of appellant railway, instituted an action on the case against appellant in the Circuit Court of White county to recover for damages alleged to have been caused by reason of certain excavations made by appellant on its said right of way on said above de-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

scribed premises, and also for damages alleged to have been caused by reason of the failure on the part of appellant to keep its said right of way through appellee's lands free from combustible materials, by reason whereof, said materials on said right of way were ignited by a passing engine and the fire spread to the premises of appellee, thereby injuring the same, etc. Issue was joined and a trial was had resulting in a verdict and judgment for appellee for five hundred dollars, and from said judgment this appeal is prosecuted.

Appellant's first contention for a reversal of this judgment is that the court erred in refusing to direct a verdict in its favor on each of the three counts of appellee's declaration. The first and second counts are based on the theory that appellant, by virtue of the excavation made by it on its right of way adjoining appellee's land, removed the lateral support therefrom, thereby causing appellee's land to cave and fall into said excavation and to wash, and ditches or gullies to be formed running back from appellant's right of way, thereby injuring appellee's land and rendering it in a condition so it was impossible to cultivate the same. The evidence is to the effect that the excavation made by appellant on its right of way was some ten to twelve feet from the line of appellee's land adjoining said right of way, and so far as the evidence is concerned, it fails to show or tend to show that there was any caving in of the land of appellee by virtue of said excavation alone. The evidence being to the effect that by reason of the fact that appellee's land was extremely hilly (the highest point of which was some thirty-eight feet above the track of appellant's railroad), the water at the time of a heavy rainfall would flow with such velocity from the lands of appellee on the right of way of appellant, and into the excavation made by it, that it caused the soil, which is of a washy character, to wash and flow off into the

ditch excavated by it along its right of way, thereby creating the ditches and gullies in appellee's land, some of which extended back some sixty feet.

The first and second counts of appellee's declaration present a question that so far as we have been able to ascertain is one that has never been passed upon by the Supreme or Appellate Courts in this State. The doctrine of lateral support obtains in this State and is recognized by the Supreme and Appellate Courts (*City of Quincy v. Jones,* 76 Ill. 232; *City of Joliet v. Schroeder,* 92 Ill. App. 68, affirmed in *Schroeder v. City of Joliet,* 189 Ill. 48), but has never been applied to a case of this character. That doctrine has only been held to apply to the extent that any one excavating on his own premises must not excavate so close to the land of an adjoining owner as to cause earth from the land of such adjoining owner to cave or fall into the excavation, for lack of lateral support, so far as its own weight is concerned. This doctrine, however, has not been carried to the extent that one must furnish lateral support for the additional weight that may be placed on the land of the adjoining owner. In other words, a person excavating would not be bound to furnish lateral support for a building that might be placed on the premises of an adjoining owner. In the case at bar there was some ten or twelve feet of unexcavated land between the cut made by appellant on its right of way and appellee's land. It cannot, therefore, be seriously contended that there was not sufficient lateral support for said lands of appellee, unaffected by any outside cause. The question then is, whether appellant in making the excavation on its right of way in the lawful pursuit of its business is responsible in damages by reason of the fact that heavy rains falling on appellee's land, on account of its hilly condition, would flow with such force and rapidity as to wash the banks of the ditch excavated by appellant, so as to create ditches and gullies ex-

tending back from said excavation onto the land of appellee.

We are of the opinion that appellant would not be so liable. It has been repeatedly held in this State that the owner of the dominant heritage has a right to collect the waters falling on his land and throw them on the land of the servient heritage in increasing quantities, and is not liable for damages caused thereby, providing the waters are thrown onto the servient heritage at a point where, in the course of nature, they originally flow. *Peck v. Herrington,* 109 Ill. 611; *Broadwell Spec. Drain. Dist. No. 1 v. Lawrence,* 231 Ill. 86; *Lambert v. Alcorn,* 144 Ill. 313.

The only case brought to our attention, which in its facts is similar to this case, is the case of *Pohlman v. Chicago, M. & St. P. R. Co.,* 131 Iowa 89. The opinion in that case, in arriving at the conclusion that there could be no recovery, among other things, says: "It is the theory of counsel for plaintiff that to all intents and purposes the situation presents a case of the removal by an adjoining proprietor of the lateral support to the soil of his neighbor. That such a right exists at common law in a proper case, all the books agree. The right is a natural one, and, like a surface-water servitude, is predicated upon necessity. As the term itself implies, it has relation to the support which in a state of nature the soil of one owner receives at the boundary line from the soil of his neighbor. * * * But the doctrine cannot be extended to embrace cases of trespass generally. It goes no further than to inveigh against an interference within the zone of the natural support afforded by the soil conditions at the boundary line. Manifestly, then, we cannot concur in the view that the case before us is a proper one for the application of the doctrine. It is no part of the contention presented by the petition that the ditch constructed by defendant extended to or near the boundary line, or that plaintiff's soil at the boundary

line in respect of its lateral support had been in any manner disturbed. The essence of the complaint is that by the accelerated flow of the surface water, more soil had been carried away from the general surface of plaintiff's land than otherwise would have occurred, and that this resulted in the formation of a ditch along the length of Poole Hollow, and of gullies back upon such portions of the land as drained into said hollow.''

If the holding in the Iowa case is sound, and we think it is, then there can be no recovery by appellee on the first and second counts of his declaration, and the peremptory instructions directing a verdict for appellants on said counts should have been given and it was error to refuse the same.

The third count of appellee's declaration alleges damages to appellee's land caused by fire spreading from appellant's right of way onto the land of appellee, which burned and destroyed his meadow. We think the evidence tends to support this count of appellee's declaration, and there was no error in refusing to instruct the jury to find for appellant, as to said count. It is next insisted by appellant that the court erred in giving the three instructions given on behalf of appellee, and in refusing the tenth instruction presented on behalf of appellant. Appellee's first instruction is as follows: ''That if you believe from the evidence that the defendant railway company reconstructed its road and excavated a cut, and in so doing negligently diverted the flow of surface water over the premises of the plaintiff, and thereby caused the surface water to erode the surface of such premises, and render it unfit for cultivation, as charged in the declaration, or some one of its counts; and if you believe that such premises were damaged by such acts of the defendant, then you should find for the plaintiff.''

The declaration counts on damages by reason of the excavation made by appellant causing the land of ap-

pellee to cave and fall into said excavation, whereas, this instruction is based on the theory that there was a diversion of the flow of the surface water off appellee's premises. The evidence conclusively shows that there was no diversion of the flow of water off of appellee's land. In fact, the water flowed from appellee's land just as it had always flowed onto the right of way of appellant. This instruction does not follow the theory of appellee's declaration, nor is it supported by the evidence, and for that reason should not have been given.

Appellee's second instruction is based on practically the same theory, and for that reason should not have been given. Appellee's third instruction is as follows: "That if you believe from the evidence that the defendant negligently set fire to the premises of the plaintiff, as charged in the third count of the declaration, and damaged the crops growing thereon, then in such case you should find for the plaintiff as to such count." This instruction should not have been given for the reason that the evidence conclusively shows that appellee was not in possession of the premises owned by him but that the same were rented, and that the tenant had sued for and collected the damages occasioned to the crop of hay growing on said premises. The only damages that appellee would be entitled to recover for are the damages to the remainder.

It is next contended by appellant that the verdict is excessive. The evidence tends to show that some thirteen or fourteen acres of meadow were burned over by the fire set out by appellant's engine, and was thereby destroyed, and that it was necessary to resow the same.

The evidence further tends to show that the cost of resowing and the loss of the succeeding crop would amount to from six to ten dollars per acre. In other words, the maximum damages on account of the fire

would not exceed one hundred forty dollars. It is also insisted by appellant that there was no evidence in the record tending to show the value of the premises of appellee before the fire and after the fire, and that therefore there was no basis on which to estimate appellee's damages. Appellant, however, is not in a position to insist on this measure of damages, as it offered on the trial testimony as to the cost of resowing the land burned over, and as to the loss of the succeeding crop of hay. We are inclined to hold that this is a correct basis for estimating the damages in this character of case.

As appellee is not entitled to recover on the first and second counts of his declaration, it is not necessary to consider the evidence with reference to the amount of damages suffered by him, by reason of the washing of his land.

For the reasons above set forth, the judgment of the trial court will be reversed and said cause remanded.

*Reversed and remanded.*